PITMAN, J.
|!Plaintiff William E. Coburn appeals the district court’s granting of summary judgment in favor of Defendants International Paper Company (“IP”), International Paper Company Salary Continuance Plan[1] (“the Plan”) and Sedgwick Claims Management Services, Inc. (“Sedgwick”). For the following reasons, we affirm.

FACTS

On June 26, 2012, Mr. Coburn filed a petition for damages for breach of contract. He stated that he was an employee of IP and was eligible to participate in its Plan, which is managed by Sedgwick and provides for a continuation of an employee’s salary if the employee is disabled. He *1189 stated that he became disabled on August 29, 2009, and applied for continuation of his salary. Sedgwick first denied his request, but, after an appeal, granted the request for the time period from August 31, 2009, through September 30, 2009, and denied his claim for the period from October 1, 2009, through January 31, 2010.[2] Mr. Coburn argued that this denial was a “bad faith, intentional denial of a valid claim” and that his compensation agreement was breached in bad faith by the denial. He requested the payment' of wages from October 1, 2009, through January 31, 2010, plus 90 days’ wages as penalty pursuant to thp Louisiana Wage Payment Act (“LWPA”), i.e., La. R.S. 23:631, et seq., in addition to all damages, including mental anguish, pain and suffering.
[¡.On September 18, 2013, Defendants filed a motion for partial summary judgment, arguing that they are entitled to summary judgment on Mr. Coburn’s claim that he is entitled to wages from October 1, 2009, through January 31, 2010, plus 90 days’ wages as penalty, because the disability benefits to which he claimed he is entitled are not “wages” pursuant to La. R.S. 23:631.
On October 24, 2013, the district court filed a ruling granting Defendants’ motion for partial summary judgment. It noted that Mr. Coburn attempted to equate disability pay to earned wages in his argument that he is entitled to unpaid wages. It determined that the Plan’s “purpose is to provide a wage replacement while the employee cannot earn a wage. Plan benefits are neither earned nor accrued. As such, they are not analogous to accrued, unused vacation leave as contemplated” by the LWPA.
On March 17, 2014, Defendants filed a motion for summary judgment, contending that Mr. Coburn cannot establish that Sedgwick’s denial of short-term disability benefits was arbitrary or capricious because the information before the Plan’s administrator provided a rational basis for the administrator’s determination pursuant to the terms of the Plan. Defendants added that, if Mr. Coburn cannot show that the denial of benefits was arbitrary or capricious, the district court need not address the issue of bad faith. They further contended that, even if the district court determines that there is a genuine issue of material fact as to the propriety of the administrator’s determination, Mr. Coburn cannot establish that they exercised their discretion in bad faith.
|sOn May 9, 2014, Mr. Coburn filed an opposition to Defendants’ motion for summary judgment, in which he alleged that Sedgwick’s administrative processing of his application for salary continuance was “conducted in a manner designed to discourage [him] from continuing his quest to seek benefits.” He reasserted that Defendants breached the contract to continue his salary during his period of short-term disability and that he is entitled to damages for Defendants’ bad faith.
On May 19, 2014, a hearing was held on the motion for summary judgment. Attorneys for both parties reiterated the arguments set forth in their written motions and memoranda.
On June 4, 2014, the district court filed a ruling granting Defendants’ motion for summary judgment. It noted the unique procedural posture of the case, stating that it is a “motion for summary judgment where the issue is not necessarily whether *1190 a genuine issue of material fact exists, but whether the Committee’s decision based on all the facts in the record was arbitrary and capricious.” It opined that, in this case, a trial on the merits would add no additional facts or evidence not already in the record. It further stated that judicial review of the administration of a benefits plan is limited; and the administrator’s determination is conclusive so long as the evidence before it was sufficient and the decision was not arbitrary, capricious or in bad faith. The district court also discussed the physicians’ findings that were considered by Sedgwick and determined that, while it “may not agree with the Committee’s determination to deny benefits, it cannot say that it was an abuse of discretion.” It further noted that an |4employer is not bound by the recommendations of an employee’s treating physician and that independent medical assessments are not given less weight. A written judgment granting the motion for summary judgment and dismissing Mr. Coburn’s claims with prejudice was filed on June 20, 2014.
On August 27, 2014, Mr. Coburn filed a motion appealing the June 20, 2014 judgment.

ARGUMENT

Breach of Contract

In his first assignment of error, Mr. Coburn argues that the district court erred in granting summary judgment, specifically by applying the Employee Retirement Income Security Act’s (“ERISA’s”) “arbitrary, capricious, and bad faith” standard to an ordinary, non-ERISA breach of contract claim. He states that, because the contract covers the extension of his salary, it is governed by the LWPA. He also contends that he can show that Defendants failed to perform an obligation, which is a prerequisite to his claim of bad faith breach of contract.
Defendants argue that the district court did not err in granting their motion for summary judgment, contending that the administrator’s discretionary decision regarding whether Mr. Coburn was disabled is subject to the arbitrary and capricious standard of the Louisiana Administrative Procedure Act (“LAPA”); and, therefore, it did not err in applying this standard of judicial review. Defendants further argue that the district court correctly found that the Plan administrator did not abuse its discretion because the findings of physicians regarding Mr. Coburn’s | .¡alleged disability should be deemed evidence sufficient to provide a rational basis for the administrator’s determination. They also argue that bad faith is not at issue because Mr. Coburn cannot show that the Defendants failed to perform an obligation.
An appellate court reviews a trial court’s granting of summary judgment de novo. Volentine v. Raeford Farms of La., L.L.C., 48,219 (La.App.2d Cir.7/24/13), 121 So.3d 742, unit denied, 13-2493 (La.1/17/14), 130 So.3d 948. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(B)(2).
Mr. Coburn’s contention that the LWPA applies to the facts of this case is misplaced. He seeks review of Sedgwick’s decision to limit his disability payments to one month instead of granting him the maximum of 22 weeks. The LWPA’s pur *1191 pose is to provide a former employee with a vehicle for receiving unpaid wages from a former employer. La. R.S. 23:631; Boudreaux v. Hamilton Med. Grp., Inc., 94-0879 (La.10/17/94), 644 So.2d 619. It does not provide a former employee with a vehicle to seek review of a disability plan administrator’s determination of the employee’s disability status.
Defendants’ contention that the LAPA applies to this case is misplaced. The LAPA, as found in Title 49 of the Louisiana Revised Statutes, applies to state administration, and the Plan at issue in this case is a | ¿private plan. Further, ERISA does not apply to this case because the Plan is self-defined as a non-ERISA plan.
Parties are free to contract for any object that is lawful, possible and determined or determinable. La. C.C. art. 1971. Contracts have the effect of law for the parties and must be performed in good faith. La. C.C. art. 1983.
In the case sub judice, the Disability Plan For International Paper Employees with Salaried Benefits states that its terms apply in full to an ERISA-governed Long-Term Disability Plan and apply in part to the non-ERISA Salary Continuance Plan. The Plan explains that “the general administration information, such as claims administration and the claims review process, apply to the Salary Continuance Plan.” The Plan states that for an employee to be eligible for salary continuance for a maximum of 22 weeks, the employee “must be unable, because of illness or injury, to perform [his/her] job and [he/she] must be under the regular care of a licensed physician.” It further sets forth specific procedures for filing a claim and states:
The plan administrator has discretion to interpret and administer the provisions of the Plan and to decide any claims or disputes that may arise under the Plan. The decisions of the plan administrator with respect to any such matter shall be final and binding on both the company and the members of the Plan.
The Plan also sets forth procedures for review of a decision by the administrator. The employee must request a review in writing. The administrator
shall afford the claimant a full and fair review of the decision denying the claim and shall:
I n* * *
• Provide a review that does not afford deference to the initial claim determination ...;
• If the decision is based on a medical judgment, consult with a health care professional with experience in the appropriate field;
• Provide the claimant with the identity of those medical experts whose advice was obtained in connection with the claim; and
• Ensure that any health care professional consulted during the review is someone other than the person consulted in the initial claim determination (or a subordinate of that person).
Sedgwick first determined that Mr. Co-burn was not disabled as defined by the Plan. In. making this determination, it reviewed medical records from Dr. Leigh Dillard, Mr. Coburn’s primary care physician, and Ronald Brown, a licensed professional counselor, and reviewed reports from independent physicians. Dr. Dillard met with Mr. Coburn multiple times in August through November 2009 and found that he suffered from severe depression *1192 and was unable to return to work as a result. Mr. Brown regularly met with Mr. Coburn in September through December 2009 and also found that he suffered from severe depression and was unable to return to work. Independent physicians spoke with Dr. Dillard and Mr. Brown and reviewed their records. Dr. Reginald Givens, who is board certified in psychiatry and neurology, determined that Mr. Co-burn was not disabled and unable to perform his regular unrestricted job as of August 31, 2009. Dr. Givens noted that he learned from Dr. Dillard that Mr. Coburn had a conflict with a supervisor at work. Dr. Givens explained that there was
insufficient objective evidence of cognitive dysfunction that would prevent [Mr.] Coburn from performing occupational duties. Although there is documentation of work-related conflict, that does not support an inability to actually perform 18occupational duties. There are no suicidal or homicidal ideations, intent, or plan, no delusions or hallucinations reported....
Dr. Michael Gross, who is board certified in internal medicine and nephrology, determined that Mr. Coburn was not disabled from an internal medicine standpoint and that “there are no objective clinical findings documented which would support inability to perform his regular unrestricted job as of [August 31, 2009].”
Mr. Coburn appealed Sedgwick’s initial decision and provided additional information. He wrote to the Sedgwick Appeals Committee and stated why he believed he was unable to perform his job operating a paper machine. Additional medical records dated December 2009 and January 2010 from Dr. Dillard were provided to Sedgwick regarding Mr. Coburn’s severe depression and inability to work. Dr. Brown noted in December 2009 and January 2010 that Mr. Coburn continued to suffer from major depression, but that his condition had improved. Mr. Coburn’s claim was reviewed by two independent physicians. Dr. Taiye A. Jordan, who is board certified in internal medicine, concluded that no conditions could be identified to clearly substantiate Mr. Coburn’s disability from August 31, 2009, through January 31, 2010, and that, from an internal medicine perspective, he should have been able to perform his job during that time. Dr. Lawrence J. Albers, who is board certified in psychiatry and neurology, found that, from a psychiatric perspective, Mr. Coburn was disabled from August 31, 2009, through September 30, 2009, but that there was insufficient evidence to support that' he was disabled and unable to work | afrom October 1, 2009, through January 31, 2010. Dr. Albers explained that he determined Mr. Coburn was disabled from August 31, 2009, through September 30, 2009, because he learned from a teleconference with Dr. Dillard that, during this period of time, Mr. Coburn
was tearful, depressed, unkempt, not shaved, distraught, paranoid, had psy-chomotor agitation, had difficulty with his concentration with trouble focusing, and difficulty with his memory, rambling, and that it took several weeks for him to begin to focus again.
Dr. Albers noted that this information was not provided to Dr. Givens, who previously reviewed Mr. Coburn’s claim. Dr. Alb-ers also found that Mr. Coburn should have been able to return to work on October 1, 2009, because, after September 30, 2009, there was “no evidence of altered sensorium, quantified cognitive dysfunction or loss of global functionality” and his “[mjemory, cognition, and concentration *1193 are not demonstrated ... to be impaired.” Based on these medical records and the findings of the reviewing physicians, Sedgwick determined that Mr. Coburn was disabled from August 31, 2009, through September 30, 2009, but was no longer disabled as of October 1, 2009, and could return to work.
The parties in this case adhered to the administrative procedures set forth in the Plan. Mr. Coburn failed to prove that he suffered from a psychological or psychiatric disability that would qualify him for extended wage continuation. Reviewing this case de novo, we find that there is no genuine issue of material fact; and, therefore, the district court did not err in granting summary judgment.
Accordingly, this assignment of error lacks merit.

11ftApplication of LWPA

In his second assignment of error, Mr. Coburn argues that the district court erred in granting Defendants’ motion for partial summary judgment and holding that the LWPA did not apply to his claim for salary continuation pay. Citing La. R.S. 23:631, Mr. Coburn states that the statute does not refer to paying “wages” and instead refers to “the amount then due under the terms of employment.” He contends that non-wage claims are recognized under the LWPA.
Defendants argue that the district court did not err when it granted their motion for partial summary judgment and found that Mr. Coburn had no claim under the LWPA because the disability benefits he sought do not constitute “wages.” They contend that even if Mr. Coburn were entitled to the benefits he was denied, he cannot maintain a claim for past-due wages pursuant to La. R.S. 23:631 et seq.
La. R.S. 23:631 states in part:
A.(l)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.
[[Image here]]
InD.Cl) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer’s policy.
*1194 As discussed, supra, Mr. Coburn was not disabled from October 1, 2009, to January 31, 2010. Accordingly, he is not entitled to salary continuance for this time period upon which he can maintain his argument that he is entitled to an “amount then due under the terms of employment” as contemplated in La. R.S. 23:631(A) (1) (a). Furthermore, had Mr. Coburn been found to be disabled during the time period of October 1, 2009, to January 31, 2010, he would not be entitled to recovery pursuant to the LWPA because the LWPA does not apply to salary continuance due to disability. See Mire v. Ormet Corp., 371 So.2d 1209 (La.App. 1st Cir.1979), writ denied, 373 So.2d 509 (La.1979). Salary continuance payments for disability are not analogous to vacation pay as set forth in La. R.S. 23:631(D) because salary continuance payments are not “accrued” or “earned.”
Accordingly, this assignment of error lacks merit.

\v,CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court in favor of Defendants International Paper Company, International Paper Company Salary Continuance Plan and Sedgwick Claims Management Services, Inc., and against Plaintiff William E. Coburn. Costs of this appeal are assessed to Plaintiff William E. Coburn.
AFFIRMED.

. Defendants state that International Paper Company and International Paper Company Salary Continuance Plan are not separate entities.

. Mr. Coburn retired on February 1, 2010.